# ADJUSTABLE RATE NOTE
(1 Year Treasury Index—Rate Caps—Fixed Rate Conversion Option)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALSO CONTAINS THE OPTION TO CONVERT MY ADJUSTABLE RATE TO A FIXED RATE.

AUGUST 31, 19 88     SCHAUMBURG     ILLINOIS
                     [City]          [State]

3909 WHISPERING TRAIL DRIVE HOFFMAN ESTATES, ILLINOIS 60192 60195
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 146,700.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is THE FIRST CHICAGO BANK OF OAK PARK

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 9.125 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Sections 4 or 5 of this Note is the rate I will pay both before and after any default described in Section 8(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on OCTOBER 1st, 19 88 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on SEPTEMBER 1, 20 18 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at THE VILLAGE MALL PLAZA OAK PARK, IL 60301 or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,193.60. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 or 5 of this Note.

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The adjustable interest rate I will pay may change on the first day of SEPTEMBER, 19 91, and on that day every 12th month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index." THE INITIAL INDEX VALUE FOR THIS LOAN IS 7.590%

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & THREE FOURTHS percentage points ( 2.75 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.125 % or less than 7.125 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage point (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 15.125 %, which is called the "Maximum Rate."

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

MMS

Exhibit A

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my adjustable interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. FIXED INTEREST RATE OPTION

(A) Option to Convert to Fixed Rate

I have a Conversion Option that I can exercise unless I am in default or this Section 5(A) will not permit me to do so. The "Conversion Option" is my option to convert the interest rate I am required to pay by this Note from an adjustable rate with interest rate limits to the fixed rate calculated under Section 5(B) below.

The conversion can only take place on the (1) if the first Change Date is 21 months or less from the date of this Note, the third, fourth or fifth Change Date, or (2) if the first Change Date is more than 21 months from the date of this Note, the first, second or third Change Date. Each Change Date on which my interest rate can convert from an adjustable rate to a fixed rate also is called the "Conversion Date." I can convert my interest rate only on one of these three Conversion Dates.

If I want to exercise the Conversion Option, I must first meet certain conditions. Those conditions are that: (i) I must give the Note Holder notice that I want to do so at least 15 days before the next Conversion Date; (ii) on the Conversion Date, I must not be in default under the Note or the Security Instrument; (iii) by a date specified by the Note Holder, I must pay the Note Holder a conversion fee of U.S. $ 100.00----   ; and (iv) I must sign and give the Note Holder any documents the Note Holder requires to effect the conversion.

(B) Calculation of Fixed Rate

My new, fixed interest rate will be equal to the Federal National Mortgage Association's required net yield as of a date and time of day specified by the Note Holder for (i) if the original term of this Note is greater than 15 years, 30-year fixed rate mortgages covered by applicable 60-day mandatory delivery commitments, plus five-eighths of one percentage point (0.625%), rounded to the nearest one-eighth of one percentage point (0.125%), or (ii) if the original term of this Note is 15 years or less, 15-year fixed rate mortgages covered by applicable 60-day mandatory delivery commitments, plus five-eighths of one percentage point (0.625%), rounded to the nearest one-eighth of one percentage point (0.125%). If this required net yield cannot be determined because the applicable commitments are not available, the Note Holder will determine my interest rate by using comparable information. My new rate calculated under this Section 5(B) will not be greater than the Maximum Rate stated in Section 4(D) above.

(C) New Payment Amount and Effective Date

If I choose to exercise the Conversion Option, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe on the Conversion Date in full on the Maturity Date at my new fixed interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Beginning with my first monthly payment after the Conversion Date, I will pay the new amount as my monthly payment until the Maturity Date.

## 6. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 7. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 8. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        FIFTEEN   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.00   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Exhibit A

### 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 11. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 12. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) Until I exercise my Conversion Option under the conditions stated in Section 5 of this Adjustable Rate Note, Uniform Covenant 17 of the Security Instrument is described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) If I exercise my Conversion Option under the conditions stated in Section 5 of this Adjustable Rate Note, Uniform Covenant 17 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Uniform Covenant 17 of the Security Instrument shall instead be described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower. .

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
THOMAS W. TURK                    -Borrower

_____ (Seal)
ROBIN ANN TURK                    -Borrower

_____ (Seal)
                                  -Borrower

FAFA LN:
LENDER NO
SERVICER NO                       _____ (Seal)
MIDWEST MORTGAGE SERVICES INC                    -Borrower
OAKBROOK TERRAC   IL  60181

[Sign Original Only]

Exhibit A

PAY TO THE ORDER OF MIDWEST MORTGAGE SERVICES, INC.
WITHOUT RECOURSE

THE FIRST CHICAGO BANK OF OAK PARK

By: *Rebecca Jensen*
Rebecca Jensen, Assistant Vice President
Name and Title

Attest: *Gary S. Collins*
Gary S. Collins, Assistant Secretary
Name and Title

Pay To The Order Of

Without Recourse
MIDWEST MORTGAGE SERVICES, INC.
BY: _____
(Vice President)
ATTEST: _____
(Asst. Secretary)

Exhibit A